UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 10-cr-20410-LENARD/Turnoff

UNITED STATES OF AMERICA,

    Plaintiff,

v.

SHAHEED RASHARD THOMPSON,
et al.,

    Defendant.
_____/

## OMNIBUS ORDER

**THIS CAUSE** is before the undersigned upon Defendant Shaheed Thompson's Motion to Suppress Statements **[DE 338]**, and Motion to Suppress Physical Evidence **[DE 339]**. These matters were referred to the undersigned by the Honorable Joan A. Lenard, United States District Judge for the Southern District of Florida. **[DE 350]**. A hearing on these motions was held on October 12, 2010. **[DE 391]**. With respect to Defendant's Motion to Suppress Physical Evidence **[DE 339]**, at the Government's request **[DE 423]**, the hearing was re-opened for the limited purpose of introducing into evidence color copies of the consent form and the property receipts. **[DE 430]**. The hearing took place on November 8, 2010. **[DE 447]**.

The parties were provided with the opportunity to submit post-hearing supplemental memoranda. The Government submitted a supplemental memorandum on October 15, 2010. **[DE 397]**. Defendant did not submit any further pleadings with respect to these matters.

The Court has considered the written and oral arguments, the testimonial and record

CASE NO.: 10-cr-20410-LENARD/Turnoff

evidence, the court file, the applicable law, and is otherwise duly advised in the premises.

I.  Motion to Suppress Statements **[DE 338]**; the Government's Omnibus Response **[DE 380]**.

　　A.  Findings of Fact

Federal Bureau of Investigations ("FBI") Special Agent Lionel S. Lofton, Jr., testified at the hearing on October 12, 2010.

On June 3, 2010, the FBI set out to execute approximately 14 arrest warrants in connection with the present case. The agents were divided into teams for the purpose of simultaneously executing the arrest warrants. Special Agent Jose A. Perez was the team leader for Defendant's arrest. Approximately 10 co-defendants were arrested and transported to FBI headquarters in North Miami Beach for processing on June 3, 2010. Some of the arrests involved consent searches as well. The processing at headquarters entailed obtaining biographical information, filling out forms for the U.S. Marshals, obtaining buccal swabs for DNA testing and filling out the accompanying paperwork, obtaining fingerprints and filling out the accompanying paperwork, and obtaining photographs. Lunch was also provided, and the arrestees were interviewed. After all arrestees were processed, they were transported to the custody of the Marshals at the same time.

Defendant was arrested in his apartment in Hialeah at approximately 6:18 a.m. He arrived at FBI headquarters in North Miami Beach at approximately 8:00 a.m. Not only did he live the farthest away from headquarters, but the officers had conducted a consent search of the apartment as well. While at FBI headquarters, Defendant was processed as referenced *supra* and met with federal pretrial service representatives. He was also interviewed by Agent Lofton. Agent Lofton read

CASE NO.: 10-cr-20410-LENARD/Turnoff

Defendant his <u>Miranda</u> rights. Defendant indicated that he understood same and initialed every right. He executed the <u>Miranda</u> Rights Notification form at approximately 2:53 p.m. Prior to asking any questions, Agent Lofton played a couple of wire intercepts for Defendant. Defendant identified co-Defendant Antwan Gray's voice and mentioned that he did not hang out with him any more. After that, Defendant Thompson exercised his right not to speak to Agent Lofton and ended the interview.

B.  **Discussion**

Defendant moved to suppress any statements made on June 3, 2010, arguing that he did not receive valid <u>Miranda</u> warnings and did not knowingly and voluntarily waive same, and that any statements were made more than 6 hours after arrest and before he was taken before a magistrate judge without unnecessary delay. The Government argued that Defendant received and knowingly and voluntarily waived his <u>Miranda</u> rights, and that there was no unnecessary delay in presenting Defendant to a magistrate judge.

1.  **Unnecessary Delay**

Defendant argued that the delay in not bringing him before a magistrate judge prior to his interrogation at 2:53 p.m. was unnecessary and necessitated suppression of his statements pursuant to Rule 5 of the Federal Rules of Criminal Procedure. Rule 5 provides that "[a] person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge . . . unless a statute provides otherwise." Fed. R. Crim. P. 5(a)(1)(A). Defendant bears the burden of establishing a Rule 5 violation. <u>United States v. Brown</u>, 459 F.2d 319, 324 (5th Cir.

CASE NO.: 10-cr-20410-LENARD/Turnoff

1972).[1]

In this connection, the United States Supreme Court has held that voluntary confessions are inadmissible if given after an unreasonable delay in presentment. Corley v. United States, —U.S.—, —, 129 S. Ct. 1558, 1563, 173 L.Ed.2d 443 (2009). The Corley Court held that 18 U.S.C. § 3501 modified the rule in McNabb v. United States, 318 U.S. 332, 63 S. Ct. 608, 87 L.Ed.2d 819 (1943), and Mallory v. United States, 354 U.S. 449, 77 S. Ct. 1356, 1 L.Ed.2d 1479 (1957), "under which an arrested person's confession is inadmissible if given after an unreasonable delay in bringing him before a judge." Corley, 129 S. Ct. at 1562. Pursuant to 18 U.S.C. § 3501(c), any admissions made within 6 hours of arrest are deemed admissible, so long as they were made voluntarily and are otherwise admissible under the Federal Rules of Evidence. 18 U.S.C. §3501(c). Statements obtained from a defendant prior to his presentation to a magistrate judge may be suppressed if there was unnecessary delay in presenting the defendant before the magistrate judge. Corley, 129 S. Ct. at 1563. Such confessions may, nonetheless, be admissible if the trial judge finds the delay was reasonable considering the means of transportation and the distance traveled to the nearest available magistrate judge. Id. If the statement was offered prior to the presentment or after 6 hours, then the court must determine whether the delay was unreasonable or unnecessary under the McNabb-Mallory line of cases. If it was, then the statement must be suppressed. Id.

In order to determine whether there has been a violation, the court must consider the reasons for the delay. United States v. Purvis, 768 F.2d 1237, 1239 (11th Cir. 1985). Among the various

---

[1] Pursuant to Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981), decisions of the Fifth Circuit handed down on or before September 30, 1981, became binding as precedent for the newly created Eleventh Circuit.

CASE NO.: 10-cr-20410-LENARD/Turnoff

factors that may be considered are: "'the availability of a committing magistrate, the length of delay before the prisoner is taken before the magistrate, and the police purpose or justification, if any, for the delay.'" United States v. Mendoza, 473 F.2d 697, 702 (5th Cir. 1973) (quoting Rogers v. U.S., 330 F.3d 535 (5th Cir. 1964)); Brown, 459 F.2d at 324. Moreover, it is also proper to consider "whether the defendant was mistreated or improperly interrogated," Purvis, 768 F.2d at 1239, as the underlying purpose of Rule 5 is to prevent administrative detention in the absence of probable cause and to "reduce the opportunity for third-degree practices by the police." Mendoza, 473 F.2d at 702 (citing Culombe v. Connecticut, 367 U.S. 568, 584-85, 81 S. Ct. 1860, 6 L.Ed.2d 1037 (1961)).

Delays effected for the purpose of interrogation are considered to be unnecessary. Corley, 129 S. Ct. At 1563. Some courts have found that delays attributable to "routine processing, transportation, overnight lodging, and a defendant's cooperation with authorities" are reasonable or excusable. United States v. Pena Ontiveros, 547 F.Supp.2d 323, 339 (S.D.N.Y. 2008); United States v. Redlightning, 624 F.3d 1090, (9th Cir. 2010) (holding overnight presentment delay was reasonable when "no magistrate judge was reasonably available until 2:30 p.m. on [the following day], when the next arraignment calendar commenced"); United States v. Garcia-Hernandez, 569 F.3d 1100, 1106 (9th Cir. 2009) (confession obtained almost 20 hours after arrest was not attributable to unnecessary delay given that agents arrested an atypical high volume of individuals that day which required additional time for administrative processing and review of charges to be filed before he could be presented to a magistrate judge). Other circuits have held that a defendant's "valid Miranda waiver also waives the prompt judicial warning of one's constitutional rights" under McNabb-Mallory. United States v. Barlow, 693 F.2d 954, 959 (6th Cir. 1982) (collecting cases);

Gov't of Virgin Islands v. Kirnon, 377 F.Supp. 601, 613 (D. Vi. 1974) ("This result seems to be necessary in order to avoid the absurdity of permitting voluntary questioning after a Miranda waiver but concluding that the confession obtained was inadmissible because the defendant was questioned rather than taken to a magistrate as quickly as possible.").

Here, Defendant was arrested at approximately 6:18 a.m. on June 3, 2010. Under Corley and § 3501, he should have been presented before a magistrate judge by 12:18 p.m. that day. Defendant signed the Miranda waiver at 2:53 p.m. He was not presented before the magistrate judge until the following morning on June 4, 2010, which was approximately 14 hours after his arrest.

As the Government correctly argued, the delay in this case was not unnecessarily prolonged in light of the burden on the agents to simultaneously process multiple individuals. Neither was the delay in this case caused by a desire to interrogate Defendant Thompson further. Rather, it was brought about by a logistical problem given the great volume of arrestees that needed to be processed. Given the burden on agents to process a large volume of individuals, which included, *inter alia*, photographs, fingerprints, DNA swabs, accompanying forms, and lunch, coupled with Agent Lofton's testimony that if the arrestees were not received by the marshals by 11:00 a.m. they would be held over until the next day's morning calendar, the undersigned finds that Defendant has not met his burden of showing that the delay in this case was occasioned for the purpose of taking a confession. Under these circumstances, the undersigned finds that the presentment delay was reasonable and does not require suppression of Defendant's voluntary statements.

2. **Miranda Waiver**

Post-arrest confessions are admissible when a defendant has been advised of his rights under

CASE NO.: 10-cr-20410-LENARD/Turnoff

Miranda, and the defendant has knowingly, voluntarily, and intelligently waived those rights. United States v. Jones, 32 F.3d 1512, 1516-17 (11th Cir. 1994). In custodial situations, the burden is on the government to prove, by a preponderance of the evidence, that the defendant was advised of his constitutional rights, made a knowing and voluntary waiver of those rights, and that any subsequent statements were voluntarily made. United States v. Chirinos, 112 F.3d 1089, 1102 (11th Cir. 1997). For a Miranda waiver to be valid, it must be voluntary, knowing, and intelligent. Miranda v. Arizona, 384 U.S. 436, 444, 86 S. Ct. 1602, 1613, 16 L.Ed.2d 694 (1966). In making this determination, the court must assess the totality of the circumstances surrounding the questioning. Moran v. Burbine, 475 U.S. 412, 421, 106 S. Ct. 1135, 1141, 89 L.Ed.2d 410 (1986). This entails an assessment of whether the waiver "was the product of a free and deliberate choice rather than intimidation, coercion, or deception," and whether it was "made with full awareness of both the right being abandoned and the consequences of the decision to abandon it." Id.

The voluntariness of an admission is also determined under the "totality of all the surrounding circumstances–both the characteristics of the accused and the details of the interrogation." Schneckloth v. Bustamonte, 412 U.S. 218, 226, 93 S. Ct. 2041, 2047, 36 L.Ed.2d 854 (1973). The pertinent issue in this regard is "whether the person's will to choose between remaining silent and making a statement is affected by any undue pressure." U.S. v. Grimes, 911 F.Supp. 1485, 1497-98 (M.D. Fla. 1996). As the Eleventh Circuit noted in United States v. Mendoza-Cecelia,

> The focus of the voluntariness inquiry is on whether the defendant was coerced by the government into making the statement: "The relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception." Colorado v. Connelly, 479 U.S. 157, 170, 107 S.Ct. 515, 523, 93 L.Ed.2d 473 (1986) (citation omitted). The

district court must consider the totality of the circumstances in assessing whether police conduct was "causally related" to the confession. Sufficiently coercive conduct normally involves subjecting the accused to an exhaustingly long interrogation, the application of physical force or the threat to do so, or the making of a promise that induces a confession. Isolated incidents of police deception and discussions of realistic penalties for cooperative and non-cooperative defendants are normally insufficient to preclude free choice.

963 F.2d 1467, 1475 (11th Cir.1992) (citations omitted). Thus, a voluntary confession is the product of a defendant's free and rational choice. Harris v. Dugger, 874 F.2d 756, 761 (11th Cir. 1989). Admissions obtained "by any sort of threat or violence, or obtained by any direct or implied promises, or by the extension of any improper influence" are deemed involuntary. Id.; U.S. v. McKay, No. 09-CR-13-FtM-29SPC, 2009 WL 2151296, at *4 (M.D. Fla. Jul. 14, 2009).

Here, there is no indication in the record that Defendant was subjected to any conduct that may have been considered threatening or coercive. In fact, upon being advised of his Miranda rights, Defendant made a voluntary statement and then proceeded to invoke his right to terminate the questioning. These actions are consistent with Defendant's awareness and understanding of his rights and are indicative that the statement made by Defendant was voluntary and knowing. As such, the undersigned finds that the Miranda waiver was knowing and voluntary, and any statements made by Defendant thereafter should not be suppressed.

II. Motion to Suppress Physical Evidence [DE 339]; the Government's Omnibus Response [DE 380]; Government's Supplemental Response [DE 397].

Defendant filed an Emergency Motion to Strike the Government's Supplemental Response because it contained two exhibits that were not previously introduced [DE 398], which the undersigned granted. [DE 411]. The Government then filed a Motion to Reopen the Evidentiary

CASE NO.: 10-cr-20410-LENARD/Turnoff

Hearing for the limited purpose of introducing the two exhibits. **[DE 423]**. The undersigned granted the Motion **[DE 430]**, and held a supplemental hearing on November 8, 2010. **[DE 447]**.

**A.     Findings of Fact**

FBI Special Agent Jose A. Perez and Tyshika Kitchen testified at the hearing on October 12, 2010. Agent Perez testified also at the November 8, 2010 hearing.

On June 3, 2010, FBI agents arrested Defendant Thompson at the apartment where he resides with his wife, Tyshika Kitchen, her daughter, and their son. Officers searched Defendant's apartment at the time of his arrest.

Agent Perez testified that he was the team leader for the arrest of Defendant on June 3, 2010. Defendant was not found at the first location. Based upon information obtained at the first location, they proceeded to another location down the street. They arrived shortly after 6:00 a.m. A female answered the door. The agents identified themselves and informed her they were looking for Defendant Thompson. She indicated that he was in the bedroom. There were young children present.

Once the agents arrested Defendant Thompson and removed him from the apartment, they conducted a protective sweep for officer safety. Upon determining that there was no one else present in the apartment, Agent Perez approached Ms. Kitchen and requested her consent to search the apartment. At the time, Agent Perez did not have his weapon drawn. Agent Perez explained the consent form to Ms. Kitchen and advised that she did not have to give her consent if she did not want to. No threats were made. Communication was cordial, and Ms. Kitchen was cooperative.

Upon execution of the consent form by Ms. Kitchen, the officers proceeded to search the apartment. The search yielded, *inter alia*, cellular phones, glass beakers, a digital scale, small

CASE NO.: 10-cr-20410-LENARD/Turnoff

baggies. The items were shown to Ms. Kitchen who indicated that she had no knowledge of them. Ms. Kitchen then executed a property receipt for the seized items.

According to Ms. Kitchen's testimony, she did not feel that she could refuse to execute the consent form and ask the agents to leave the apartment. She further testified that no one advised her that she did not have to consent to the search. With respect to the property receipts, Ms. Kitchen testified that she signed some papers that were flipped over for her by a female agent. Ms. Kitchen testified that the "t" in Kitchen was a little different on one of the copies of the property receipt. Agent Perez testified that the property receipt consisted of the original and two carbon copies underneath it. If one of the papers below the original shifted even slightly it would cause the signature on the carbon copies to be in a slightly different place. The purpose of the November 8, 2010 hearing was to allow the Government to introduce the original copies of the property receipt executed by Ms. Kitchen.

B.   Discussion

1.   Consent

"It is well-settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is 'per se unreasonable...subject only to a few specifically established and well-delineated exceptions.'" Schneckloth, 412 U.S. at 219, 93 S. Ct. at 2043 (quoting Katz v. United States, 389 U.S. 347, 357, 88 S. Ct. 507, 514, 19 L.Ed.2d 576 (1967)). One of those exceptions is a search conducted pursuant to voluntary consent. United States v. Garcia, 890 F.2d 355, 360 (11th Cir. 1989). "In order for consent to a search to be deemed voluntary, it must be the product of an essentially free and unconstrained choice." Id. The burden is

CASE NO.: 10-cr-20410-LENARD/Turnoff

on the Government to prove that the consent was voluntary. United States v. Tovar-Rico, 61 F.3d 1529, 1536 (11th Cir. 1995). Voluntariness is a question of fact to be determined in light of the totality of the circumstances. United States v. Mendenhall, 446 U.S. 544, 557, 100 S. Ct. 1870, 1879, 64 L.Ed.2d 497 (1980); Schneckloth, 412 U.S. at 248-49, 93 S. Ct. at 2059. Coercion "by explicit or implicit means, by implied threat or covert force" is not allowed. Schneckloth, 412 U.S. at 228, 93 S.Ct. at 2048. Factors relevant to the consideration of voluntariness include "the presence of coercive police procedures, the extent of the person's cooperation with the officer, the person's awareness of his or her right to refuse consent, the person's education and intelligence, and the person's belief that no incriminating evidence will be found." Purcell, 236 F.3d at 1281.

Based upon the testimony elicited at the hearing, there is no evidence that Ms. Kitchen was coerced by the agents into executing a consent to search the apartment. Ms. Kitchen was advised of her rights prior to executing the consent form, which was explained to her. None of the officers interacting with her had their weapons drawn. The testimony revealed that the agents permitted Ms. Kitchen to get dressed and make arrangements for the children. She testified that she told the agents they would not find anything if they searched the house. She further testified that the agents told her what they were going to do and she said okay.

2. **Credibility**

The credibility of witnesses is often the key issue in determining whether to suppress evidence. In this case, the question is whether Ms. Kitchen freely and voluntarily consented to the search of the apartment. "Credibility determinations are typically the province of the fact finder because the fact finder personally observes the testimony and is thus in a better position than a

CASE NO.: 10-cr-20410-LENARD/Turnoff

reviewing court to assess the credibility of witnesses." <u>United States v. Ramirez-Chilel</u>, 289 F.3d 744, 749 (11th Cir. 2002). In making such credibility determinations, the Court must consider the interests of the witnesses, as well as "'the internal consistency of the [witness'] testimony, or [her] candor or demeanor on the stand.'" <u>Id.</u> (quoting <u>Gallego v. United States</u>, 174 F.3d 1196, 1198 (11th Cir. 1999).

There is a conflict in the testimony regarding whether the agents advised Ms. Kitchen that she did not have to consent to the search of the apartment. The undersigned credits the testimony of Agent Perez. Based upon a review of the testimony, and observing the demeanor and interests of the witnesses, the Court concludes that Ms. Darling's testimony was not as credible as Agent Perez' testimony. <u>United States v. Pineiro</u>, 389 F.3d 1359, 1366 (11th Cir. 2004) (recognizing that credibility determinations are within the province of the fact finder).

Accordingly, based upon the credible testimony of Agent Perez, the Court finds that Ms. Kitchen freely and voluntarily executed the consent to search form. As such, the undersigned finds that the evidence in this case was obtained by the agents pursuant to a valid consent search and should not be suppressed.

### III. Conclusion

In light of the foregoing, the undersigned finds that the consent to search was valid and the evidence obtained thereby need not be suppressed.

### Recommendation

Accordingly, it is hereby **RECOMMENDED** that Defendant Shaheed Thompson's Motion to Suppress Statements **[DE 338]** be **DENIED**, and the Motion to Suppress Physical Evidence **[DE**

CASE NO.: 10-cr-20410-LENARD/Turnoff

**339]** be **DENIED**.

Pursuant to 28 U.S.C. §636(b)(1)(c), the parties may file written objections to this Report and Recommendation with the Honorable Joan A. Lenard, United States District Judge, within fourteen (14) days of receipt. Failure to file objections timely shall bar the parties from attacking on appeal any factual findings contained herein. RTC v. Hallmark Builders, Inc., 996 F.2d 1144 (11th Cir. 1993); LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1988).

**RESPECTFULLY RECOMMENDED** in Chambers, at Miami, Florida, this 26 day of February 2011.

**WILLIAM C. TURNOFF**
**United States Magistrate Judge**

cc: Hon. Joan A. Lenard
All counsel of record