UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-20410-CR-LENARD/TURNOFF

**UNITED STATES OF AMERICA**,

        Plaintiff,

vs.

**SHAHEED RASHARD THOMPSON**,

        Defendant.
_____/

**ORDER ADOPTING REPORT AND RECOMMENDATION (D.E. 627) AND DENYING DEFENDANT SHAHEED RASHARD THOMPSON'S MOTIONS TO SUPPRESS STATEMENTS (D.E. 338) AND PHYSICAL EVIDENCE (D.E. 339)**

**THIS CAUSE** is before the Court on the Report and Recommendation of U.S. Magistrate Judge William C. Turnoff ("Report," D.E. 627), issued on February 28, 2010. In his Report, Magistrate Judge Turnoff recommends that Defendant Shaheed Rashard Thompson's Motions to Suppress Statements (D.E. 338) and Physical Evidence (D.E. 339), both filed on September 14, 2010, be denied. Jefferson filed Corrected Objections (D.E. 649) to the Report on March 17, 2011, and the Government filed its Response (D.E. 647) on March 16, 2011. Upon review of the Report, Objections, Response and the record, the Court finds as follows.

**I.**    **Background**

Defendant Shaheed Rashard Thompson, alleged participant in a narcotics trafficking conspiracy, now moves to suppress statements made by him on the day of his arrest, June 3, 2010, as well evidence found in his apartment. Magistrate Judge Turnoff

held a hearing on the motions on October 12, 2010 (Hearing Tr., D.E. 424) at which Thompson's wife, Tyshika Kitchen and FBI Special Agents Lionel S. Lofton, Jr. and Jose A. Perez testified.  A supplemental hearing was held on November 8, 2010 at which Perez again testified.

The Report recommends denying Thompson's Motion to Suppress Statements. (Report at 12-13.)  It finds that the delay in bringing Thompson before a magistrate judge on the day of his arrest was not unnecessarily prolonged given the large number of arrestees.  (*Id*. at 6.)  It also finds that Thompson was advised of his *Miranda* rights; he was not subject to any coercive conduct and thus his post-arrest statements were made knowingly and voluntarily.  (*Id*. at 8.)  As to Thompson's Motion to Suppress Physical Evidence, the Magistrate Judge finds that his wife, Tyshika Kitchen, gave voluntary consent to the search of their apartment on June 3, 2010 and was not coerced by the agents.  (*Id*. at 11.)  The Report chooses to credit the testimony of Agent Perez over Kitchen on this matter, and consequently finds that the evidence found in Thompson's home, cellular phones, glass beakers, a digital scale and small baggies, should not be suppressed.  (*Id*. at 12.)

Thompson objects to Report's findings and recommendations.  Specifically, he takes issue with the over 24-hour delay in presenting him before a magistrate judge following his arrest. (Objections at 2-4.)  Thompson questions the training, knowledge and preparation of the FBI teams sent out to arrest him and his co-defendants.  He claims that Agent Lofton was aware that he had a deadline of 11:00 a.m. to take Thompson to

the U.S. Marshals, otherwise he would have to wait until the following day to be seen by the magistrate. (*Id*. at 4.) Thompson also contends that Lofton was aware of the judicially imposed rule that an arrestee must be presented to the magistrate within six hours of arrest, but he ignored this rule as well as the Marshals' deadline. (*Id*.) Finally, Thompson objects to the Report's finding that his wife gave voluntary consent to the search of their home. He argues that she was subject to the illegal and coercive presence of the agents in her apartment before she consented, thereby stripping her of the ability to make a free and unconstrained consent. (*Id*. at 6-8.)

In its Response to Thompson's Objections, the Government affirms its support for the findings and recommendations made by the Magistrate Judge. (Resp. at 6.)

**II.    Discussion**

    **A.    The Presentment Delay of Over Twenty Four Hours Was Reasonable Given the Circumstances**

Thompson was arrested at his apartment at 6:18 a.m. on June 3, 2010. Another nine of his co-defendants were arrested that day. Thompson was taken to the FBI headquarters in North Miami Beach by 8:00 a.m., where he was then processed, interviewed and read his *Miranda* rights. He executed the *Miranda* rights notification form at approximately 2:53 p.m. Thompson was not presented before the magistrate judge until the morning of June 4, 2010, approximately 24 hours after his arrest.

Federal Rule of Criminal Procedure 5 states that "[a] person making an arrest within the United States must take the defendant without unnecessary delay before a

magistrate judge." Fed. R. Crim. P. 5(a)(1)(A). A voluntary confession may be suppressed if given after an unreasonable delay in presentment. *Corley v. United States*, 556 U.S. 303 (2009). In *Corley*, the Supreme Court held that pursuant to 18 U.S.C. § 3501 and its prior case law, any statement made by a defendant prior to presentment but over 6 hours after arrest would be suppressed if the delay was unreasonable or unnecessary. *See id.*, (citing *McNabb v. United States*, 318 U.S. 332 (1943) and *Mallory v. United States*, 354 U.S. 449 (1957)). The burden of establishing a Rule 5 violation belongs to the defendant. *United States v. Brown*, 459 F.2d 319, 324 (5th Cir. 1972).

Factors to be considered in determining whether a delay is unnecessary or unreasonable are: "the availability of a committing magistrate, the length of delay before the prisoner is taken before the magistrate, and the police purpose or justification . . . for the delay." *United States v. Mendoza*, 473 F.2d 697, 702 (5th Cir. 1973) (quotation omitted); *see Brown*, 459 F.2d at 324. Delays for the purpose of interrogation are considered unnecessary. However, delays due to "routine processing, transportation, overnight lodging, and a defendant's cooperation with authorities" are reasonable or excusable. *United States v. Ontiveros*, 547 F.Supp.2d 323, 339 (S.D.N.Y. 2008); *see, e.g., United States v. Redlightning*, 624 F.3d 1090 (9th Cir. 2010) (overnight presentment delay excusable when no magistrate would be available until the following afternoon); *United States v. Garcia-Hernandez*, 569 F.3d 1100, 1106 (9th Cir. 2009) (twenty hour presentment delay was excusable given that agents had arrested an atypically high volume of individuals that day, requiring additional time for processing and review of charges).

4

Although Thompson complains of an unnecessary and unreasonable presentment delay, the Court finds otherwise. Thompson was arrested as part of a fourteen co-defendant sweep involving approximately 100 law enforcement personnel. Ten co-defendants were ultimately brought to FBI headquarters that June 3. Thompson was the ninth to arrive. All ten had to be booked, photographed, fingerprinted, swabbed for DNA, and have their forms completed for processing.

Agent Lofton testified that he was aware of the six hour presentment window. (Tr. 213-15.) He also knew that if any of the co-defendants were not completely processed and taken to the U.S. Marshals by 11:00 a.m., they could not be presented to the magistrate judge that day. (*Id*. at 215.) Therefore, his ultimate goal on June 3 was to get all defendants properly processed and ready for presentment, even though he acknowledged it was impossible to get them to the U.S. Marshals by 11:00 a.m. that morning. (*Id*. at 216.) Lofton explained that he gave all defendants, including Thompson, an opportunity to speak with FBI agents and give a statement. (*Id*. at 217.) However, the interviews were preceded by *Miranda* warnings and were not mandatory. (*Id*.)

The Court finds that Thompson's presentment delay was justified by the large number of defendants, the extensive processing and the preparation by the agents to give a proper presentation to the magistrate judge; not for the improper purpose of interrogation. Thompson's objections, raising questions about the agents' preparation and decisions regarding the arrests, do not persuade nor aid in discharging his burden to show

5

Rule 5 violations. The Court concludes that here, the presentment delay of approximately 24 hours was not unreasonable or unnecessary and does not merit the suppression of Thompson's post-arrest statements.

      **B.**    **Thompson Knowingly and Voluntarily Waived His *Miranda* Rights**

Thompson does not object to the Report's finding that he made a knowing and voluntary waiver of his *Miranda* rights and therefore his statements should not be suppressed on that ground. Thus, he waives objection on this issue. *See Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993) (failure to timely file objections shall bar parties from attacking on appeal the factual findings contained in the report).

    In the alternative, the Court's *de novo* review of the record leads it to conclude that the totality of the circumstances shows that Defendant's post-*Miranda* statements to the agents were made voluntarily and with full knowledge of his rights. *See Moran v. Burbine*, 475 U.S. 412, 421 (1986).

      **C.**    **Kitchen's Consent to the Search of Thompson's Residence Was Voluntary and Without Coercion.**

    Thompson also moves to suppress evidence found in his apartment on the morning of June 3, 2010. Following his arrest and the protective sweep of the apartment, agents requested and obtained the written consent of Kitchen to a search of the apartment.

    Although Kitchen testified that she felt coerced and that she could not refuse the consent form, the Magistrate Judge found her testimony less credible than Agent Perez'.

(Report at 11-12.) Thompson challenges this credibility determination by stressing that Kitchen was awakened by the arresting officers, made to sit on the couch in her sleeping clothes, and the officers remained in her apartment for the sole purpose of obtaining a consent to search. (Objections at 6-7.)

Reviewing the record and arguments *de novo*, the Court must determine whether Kitchen gave her consent to search freely and without coercion. "In order for consent to a search to be deemed voluntary, it must be the product of an essentially free and unconstrained choice." *United States v. Garcia*, 890 F.2d 355, 360 (1989). The Government bears the burden to show that consent was voluntary, a question of fact to be determined in light of the totality of the circumstances. *United States v. Mendenhall*, 446 U.S. 544, 557 (1980); *Schneckloth v. Bustamante*, 412 U.S. 218, 226 (1973); *United States v. Tovar-Rico*, 61 F.3d 1529, 1536 (11th Cir. 1995). Coercion "by explicit or implicit means, by implied threat or covert force," is not allowed. *Schneckloth*, 412 U.S. at 228.

Based on his testimony, Agent Perez sat Kitchen on the couch and reviewed the consent form with her. His weapon was not drawn and he spoke to her calmly. (Tr. at 114.) He recalls Kitchen being "cooperative." (*Id*.)

Kitchen's version differs considerably. Although the officers allowed her to call someone to take her children out of the apartment, she did not recall anyone telling her she could decline the search, ask the officers to leave her apartment or otherwise refuse them. (*Id*. at 154-55.)

7

The Court defers to the credibility determinations of the fact finder, here, the Magistrate Judge. *See United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002). The Report bases its credibility determination after considering the interests of the witnesses, as well as "the internal consistency of the [witness'] testimony, or [her] candor or demeanor on the stand." *Id.* (citation omitted). As a result, the Court gives Agent Perez' testimony greater weight than that of Kitchen.

Moreover, the record reveals that Kitchen was not coerced by the agents, her rights were explained to her in a calm manner and no explicit or implicit threats were made. Thompson's argument that the agents' presence in their apartment was tantamount to illegal detention is inapplicable here. Little time, if any, passed between the agents' completion of the protective sweep and their request of Kitchen for a consent to search. Consequently, the Court finds that Kitchen's consent to search her apartment on the morning of June 3, 2010 was the product of an essentially free and unconstrained choice. *See Garcia*, 890 F.2d at 360.

For all of the foregoing reasons, Thompson's Motions to Suppress must be denied. Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

1. The Report and Recommendation of U.S. Magistrate Judge William C. Turnoff (D.E. 627), issued on November 12, 2011, is **ADOPTED.**

2. Defendant Shaheed Rashard Thompson's Motion to Suppress Statements (D.E. 338), filed on September 14, 2010, is **DENIED**.

3. Defendant Shaheed Rashard Thompson's Motion to Suppress Physical

Evidence (D.E. 339), filed on September 14, 2010, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 13th  day of September, 2011.

_____
**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**